Citation Nr: 1755086 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 12-34 039 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to an evaluation higher than 10 percent for service-connected right knee patellofemoral syndrome. 

2. Entitlement to an evaluation higher than 10 percent for service-connected left knee patellofemoral syndrome. 

3. Entitlement to a separate compensable evaluation for other impairment of the right knee, to include right knee recurrent patellar subluxation.

4. Entitlement to a separate compensable evaluation for other impairment of the left knee, to include left knee recurrent patellar subluxation.


REPRESENTATION

Veteran represented by: Florida Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

C. Smith, Associate Counsel


INTRODUCTION

The Veteran served honorably in the U.S. Marine Corps from November 1987 until September 1990. This case comes to the Board of Veterans' Appeals (Board) on appeal from January 2011 and January 2015 rating decision of the Department of Veterans Affairs (VA) Regional Offices (ROs) in Newark, New Jersey and Cleveland, Ohio respectively. Jurisdiction currently resides with the RO in St. Petersburg, Florida.

In March 2015, the Veteran testified at a Travel Board hearing before the undersigned Veterans Law Judge (VLJ) and a transcript of that proceeding is of record. 

This matter was previously before the Board in October 2016, at which time the Board denied a claim of entitlement to service-connection for diabetes mellitus type II; and remanded the claims of entitlement to service connection for obstructive sleep apnea, and entitlement to increased evaluations for bilateral knee patellofemoral syndrome for further development. Following remand, a November 2016 rating decision granted entitlement to service connection for obstructive sleep apnea. The Veteran has not expressed disagreement with the effective date or evaluation assigned, thus that decision represents a full grant as to that issue and the Board has limited its scope accordingly. 

The issues of entitlement to evaluations higher than 10 percent for right and left knee patellofemoral syndrome are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The most probative evidence of record demonstrates the Veteran has bilateral recurrent patellar subluxation.


CONCLUSIONS OF LAW

1. The criteria for a separate evaluation for other impairment of the right knee are met. 38 U.S.C. §§ 1155, 5102, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5257 (2017).

2. The criteria for a separate evaluation for other impairment of the left knee are met. 38 U.S.C. §§ 1155, 5102, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5257 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSIONS

Duties to Notify and Assist

Neither the Veteran nor his attorney has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board"); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

The Veteran offered testimony before the undersigned Veterans Law Judge at a Board hearing in March 2015. The Board finds that all requirements for hearing officers have been met. 38 C.F.R. § 3.103 (c)(2) (2017); Bryant v. Shinseki, 23 Vet. App. 488 (2010). 

The Board's October 2016 prior remand directives regarding the knees involved securing outstanding treatment records and an adequate VA examination. Deficiencies in the resulting VA examination are discussed in the Remand portion below, however for the benefit granted below there is no prejudice to the Veteran as there is sufficient other evidence of record to decide the issue.

Increased Evaluations: The Knees

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Schedule), found in 38 C.F.R. Part 4 (2017). The Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1 (2017). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2017). When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3 (2017). 

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41 (2017). Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of any disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board is to consider the Veteran's medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31, 34 (1999). 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. The examination on which ratings are based must adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. 

The Veteran's right and left knee patellofemoral syndrome is current evaluated as 10 percent disabling for painful motion under 38 C.F.R. §§ 4.59, 4.71a DC 5260. Separate disability ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition was not "duplicative of or overlapping with the symptomatology" of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 262 (1994). A veteran who has painful motion and instability of the knee may be rated separately under Diagnostic Codes 5260 and 5257, provided that a separate rating must be based upon additional disability. VAOPGCPREC 23-97. 

A May 2011 VA physical therapy record documented bilateral hypermobile patella. July 2011 VA medical records noted that x-rays of the knees showed mild lateral subluxation of the patella with respect to the femur with associated mild narrowing of the lateral patellofemoral joint space. In another July 2011 VA record, the Veteran reported he felt the knee pop and the patella dislocate daily, then it would snap back into the groove after a few seconds. Examination showed bilateral hypermobile patella. Examination continued to show bilateral hypermobile patella at September 2011 and April 2012 VA physical therapy appointments. The Veteran was prescribed knee braces in October 2013 and later a cane for knee instability. 

In an October 2012 VA knee examination report, a VA examiner reported that July 2011 imaging studies were significant for mild bilateral patellar subluxation, but later in the report indicated the Veteran did not have a history of patellar subluxation. November 2014, and November 2016 VA examination reports also noted the Veteran did not have a history of patellar subluxation.

The preponderance of the evidence objective medical evidence supports a finding that the Veteran has bilateral patellar subluxation. Imaging studies from 2011 document the presence of mild bilateral patellar subluxation. The Veteran has also consistently reported symptoms of feeling like the patella dislocated. Examinations at physical therapy appointments routinely showed bilateral hypermobile patella. While the VA examiners all indicated that the Veteran did not have a history of patellar subluxation, those findings conflict with the diagnostic evidence of record, namely the 2011 x-ray report. Accordingly, separate evaluations for recurrent subluxation for each knee are warranted. 


ORDER

Entitlement to a separate evaluation for recurrent subluxation of the right knee patella is granted.

Entitlement to a separate evaluation for recurrent subluxation of the left knee patella is granted.


REMAND

Although the Board regrets the delay entailed by a remand, clarification is required regarding the nature and severity of the Veteran's bilateral patellofemoral syndrome. When VA undertakes to obtain an examination or opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). A medical examination is considered adequate "where it is based on consideration of the veteran's prior medical history and examinations and also describes the disability, if any, in sufficient detail so that the Board's 'evaluation of the claimed disability will be a fully informed one.'" Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007). An examiner's conclusion that a diagnosis or etiology opinion is not possible without resort to speculation is a medical conclusion just as much as a firm diagnosis or a conclusive opinion. Jones v. Shinseki, 23 Vet. App. 382, 390 (2010). VA examinations for musculoskeletal conditions must include joint testing for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint. 38 C.F.R. § 4.59 (2017); Correia v. McDonald, 28 Vet. App. 158 (2016). 

Per the Board's October 2016 remand directives, the Veteran underwent another VA examination in November 2016. At that time the Veteran reported that since his last examination he had decreased range of motion and pain. He reported he felt like his knees buckled when he walked. The Veteran reported two flare-ups within the past year that lasted three to four days. Initial range of motion for the right knee showed flexion to 110 degrees and extension to 0 degrees. Initial range of motion for the left knee showed flexion to 120 degrees and extension to 0 degrees. Pain was noted in flexion and extension, and there was objective evidence of pain with weight bearing. There was objective evidence of localized tenderness or pain on palpation of the joint or associated soft tissue. Examination revealed edema and tenderness around the patella and moderate crepitus consistent with chondromalacia. The Veteran was unable to perform repetitive use testing with at least three repetitions because he was in significant pain after a single range of motion test. The examiner commented that pain, lack of endurance, and incoordination significantly limited functional ability with repeated use over a period of time. The examiner then opined that the functional loss for the right knee in terms of range of motion as flexion to 110 degrees and extension to 0 degrees. For the left, the examiner reported the additional functional loss in terms of range of motion was flexion to 120 degrees and extension to 0 degrees. For both knees, the examiner was unable to say whether pain, weakness, fatigability, or incoordination significantly limited functional ability with flare-ups without resorting to mere speculation because the Veteran was in significant pain with a single range of motion.

Clarification is required regarding as the examiner did not comment on pain in active or passive motion, or pain in non-weight bearing. Also, the examiner described the additional functional loss following repetitive use over time in terms of range of motion unchanged from the initial range of motion findings, although the examiner also stated the Veteran was unable to complete three repetitions. These findings appear contradictory and clarification is required. Also, the examiner stated they were unable to determine the limitations on functional ability during a flare-up without resorting to mere speculation as the Veteran could not perform more than one range of motion repetition due to pain, however the Board notes that no testimony was elicited from the Veteran regarding the increased functional limitations during a flare up. See Sharp v. Shulkin, 29 Vet. App. 26 (2017) (noting that VA guidelines anticipate that examiners will offer flare opinions based on estimates derived from information procured from relevant sources, including lay statements of veterans). Thus, remand for a new examination and opinion is required.

Also, clarification is necessary regarding whether the Veteran has a semilunar cartilage condition in light of his testimony regarding frequent episodes of locking pain and evidence of prior joint effusion. In particular October 2012 x-rays show small joint effusion to the right knee, May 2013 imaging studies show questionable minimal joint effusion, and the 2016 examiner documented current edema. An August 2013 VA orthopedic surgery consultation note documented the Veteran had noise from torn and degenerative cartilage in both knees and chondromalacia was causing grinding. The Veteran also had popping or catching in the right knee with meniscus tissue catching in the joint. The treatment provider noted that because the Veteran did not desire surgery, an MRI was not necessary as it would only confirm the diagnosis. The November 2014 VA examiner noted that despite the 2013 findings, there had been no MRI conducted to confirm the suspicion and then concluded, as did the 2016 examiner, that the Veteran did not have a semilunar cartilage condition. On remand, clarification is necessary as to whether the Veteran has a semilunar cartilage condition as indicated by the August 2013 treatment record and the Veteran's reported ongoing symptoms.

Accordingly, the case is REMANDED for the following action:

1. Contact the appropriate VA Medical Center and obtain and associate with the claims file all outstanding records of treatment. If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his representative. 

2. After any additional records are associated with the claims file, provide the Veteran with an appropriate examination to determine the severity of the service-connected right and left knee patellofemoral syndrome. The entire claims file should be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. 

First, the examiner must utilize the appropriate Disability Benefits Questionnaire. 

Second, in opining on whether pain, weakness, fatigability, or incoordination significantly limited functional ability with flare-ups additional functional loss during a flare-up, the examiner must elicit testimony from the Veteran regarding additional functional limitation during a flare-up.

Third, the examiner must comment upon any bilateral knee pain upon active motion, passive motion, weight-bearing, and nonweight-bearing. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so. 

Fourth, the examiner is also requested to clarify whether it is at least as likely as not that the Veteran has a semilunar cartilage condition in consideration of the following: 1) the Veteran's lay testimony regarding symptoms of locking pain and swelling; 2) October 2012 and May 2013 imaging studies indicating joint effusion; and 3) the August 2013 orthopedic consultation report. If further diagnostic testing is required, this must be done.

3. Notify the Veteran that it is his responsibility to report for any scheduled examination and to cooperate in the development of the claims, and that the consequences for failure to report for a VA examination without good cause may include denial of the claims. 38 C.F.R. §§ 3.158, 3.655 (2017). In the event that the Veteran does not report for any scheduled examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

4. Ensure compliance with the directives of this remand. If a report is deficient in any manner, the AOJ must implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998). 

5. After completing the above action, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, the claims must be readjudicated. If the claims remain denied, a supplemental statement of the case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).




______________________________________________
K. MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs